UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRYAN AND SHARON GIGLIOTTI h/w ) | Case Number |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL COMPLAINT |
| vs. ) | |
| ) | |
| WELTMAN, WEINBERG & REIS ) | JURY TRIAL DEMANDED |
| CO., L.P.A. ) | |
| Defendant ) | |

## COMPLAINT AND JURY DEMAND

**COMES NOW,** Plaintiffs, Bryan and Sharon Gigliotti, h/w, by and through their undersigned counsel, Bruce K. Warren, Esquire and Brent F. Vullings, Esquire of Warren & Vullings, LLP, complaining of Defendant, and respectfully avers as follows:

### I. INTRODUCTORY STATEMENT

1. Plaintiffs, Bryan and Sharon, Gigliotti, h/w, are adult natural persons and they bring this action for actual and statutory damages and other relief against Defendant for violations to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

### II. JURISDICTION

2. Jurisdiction of this court arises under 15. U.S.C. § 1692k(d) and 28 U.S.C. §1337.

3. Venue in this District is proper in that the Defendant conducts business in the District and maintains a primary office location in this District.

### III. PARTIES

4. Plaintiffs, Bryan and Sharon Gigliotti, h/w, are adult natural persons residing at 18495 Butternut Circle, Strongsville, Ohio 44136. At all times material and relevant hereto, Plaintiffs are "consumers" as defined by the FDCPA, 15 U.S.C. § 1692a(2).

5. Defendant, Weltman, Weinberg & Reis Co., L.P.A. ("Defendant"), at all times relevant hereto, is and was a limited partnership association engaged in the business of collecting debt within the State of Ohio and the Commonwealth of Pennsylvania with a principal place of business located at 325 Chestnut Street, Suite 501, Philadelphia, PA 19106.

6. Defendant is engaged in the collection of debts from consumers using the telephone and mail. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

### IV. FACTUAL ALLEGATIONS

7. On or about November 6, 2010, Plaintiffs received a letter from Defendant regarding three (3) accounts allegedly owed to Chase Bank.

8. Defendant's letter went on to state that failure for the Plaintiffs to make payment on these accounts could lead to legal action to reduce the claim to judgment. **See Exhibit "A" (letter) attached hereto**.

9. Plaintiffs were asked to pay the balance due $10,316.02 immediately to the Defendant for the total of the three (3) accounts.

10. On or about November 11, 2010, Plaintiff, Sharon, received a call from Defendant's agent, "Heather", who bullied the Plaintiff on the phone demanding that she pay immediately on the three (3) accounts that were owed.

11. On this call, Defendant's agent, "Heather", told the Plaintiff, Sharon, that she owed $18,000, but that she would accept $14,000, and that it was as low as she could go.

12. Plaintiff, Sharon, was told that she needed to make the payment immediately.

13. Plaintiff, Sharon, informed Defendant's agent, "Heather", that she and her husband had retained the services of an attorney to aid them in their debt settlement and after providing their attorney's name and contact information asked for the Defendant to call and speak with their attorney directly.

14. Defendant's agent, "Heather", told the Plaintiff that she could not call their attorney because a law had been passed on November 1, 2010, that forbid her to accept money from any kind of debt consolidation company.

15. Defendant's agent, "Heather", went on to tell the Plaintiff, Sharon, that she better not have her attorney send a POA (Power of Attorney) either because the Defendant would not accept it.

16. During this same call, Plaintiff was told that failure to pay the debt was going to lead to her and her husband being sued and that they would be sure to get a judgment against them.

17. Defendant's agent, "Heather" continued to threaten the Plaintiff, Sharon, by telling her that the next step would be to do a "skip-trace" on her and her husband to find out where they both work so that they can garnish their wages.

18. Plaintiff, Sharon, tried to explain that they could not pay that much money at this time.

19. Defendant's agent, "Heather", encouraged the Plaintiff, Sharon, to have her husband borrow from his 401-K to get this debt paid.

20. Before ending the call, Defendant's agent, "Heather", informed the Plaintiff, Sharon, that she had seven (7) days to come up with the money and call her back and that she had better not "blow her off".

21. Plaintiff, Sharon, was told that she needed to get the money from her savings account.

22. On or about November 29, 2010, Defendant's agent, "Heather", called, Plaintiff, Sharon's, personal cell phone demanding a call back.

23. On or about December 1, 2010, Defendant's agent, "Heather", called the Plaintiffs at home and asked to speak with Plaintiff, Bryan.

24. On or about December 2, 2010, Defendant's agent, "Heather", called Plaintiff, Sharon, on her personal cell phone, and left a message for her husband.

25. On or about December 20, 2010, Plaintiff, Bryan, spoke with Defendant's agent, "Heather", and told her once again that she needed to call and speak with their attorney.

26. On or about December 22, 2010, Plaintiff, Bryan, received another call from Defendant's agent, "Heather". Plaintiff, Bryan, again told her that she needed to call his attorney.

27. On or about December 23, 2010, Plaintiffs received yet another message to their home from Defendant's agent, "Heather", to call her on the accounts. Plaintiffs did not call the agent back.

28. The Plaintiffs have suffered and continue to suffer mental anguish and emotional distress resulting in actual damages as a result of the Defendant's unlawful conduct.

29. As a direct consequence of the Defendant's acts, practices and conduct, the Plaintiffs suffered and continue to suffer from humiliation, anger, emotional distress, fear, frustration and embarrassment.

30. The Defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable.

31. The Defendant acted in a false, deceptive, misleading and unfair manner when they engaged in conduct the natural consequence of which is to harass, oppress or abuse such person in connection with the collection of a debt.

32. The Defendant knew or should have known that their actions violated the FDCPA. Additionally, Defendant could have taken the steps necessary to bring their and their agent's actions within compliance of the FDCPA, but neglected to do so and failed to adequately review those actions to insure compliance with the law.

33. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees, who were acting within the scope and course of their employment, and under the direct supervision and control of Defendant herein.

34. At all times pertinent hereto, the conduct of Defendant as well as its agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal and state law and the rights of the Plaintiffs herein.

35. As a result of Defendant's conduct, Plaintiffs have sustained actual damages, including, but not limited to, injury to Plaintiffs reputations, invasion of privacy, damage to Plaintiffs credit, out-of-pocket expenses, physical, emotional and mental pain and anguish and pecuniary loss and they will continue to suffer same for an indefinite time in the future, all to their great detriment and loss.

## COUNT I - FDCPA

36. The above paragraphs are hereby incorporated herein by reference.

37. At all times relevant hereto, Defendant was attempting to collect an alleged debt which was incurred by Plaintiffs for personal, family or household purposes and is a "debt" defined by 15 U.S.C. § 1692a(5).

38. The foregoing acts and omissions constitute violations of the FDCPA, including, but not limited to, violations of:

| | | |
|---|---|---|
| §§ 1692c(a)(2) | | After it knows the consumer to be represented by an attorney unless attorney consents or is unresponsive |
| §§ 1692d | | Any conduct the natural consequence of which is to harass, oppress or abuse any person |
| §§ 1692d(5) | | Caused the phone to ring or engaged any person in telephone conversations repeatedly |
| §§ 1692(e) | | Any other false, deceptive or misleading representation or means in connection with debt collection |
| §§ 1692e(4) | | Nonpayment of any debt will result in the arrest or imprisonment of any person |
| §§ 1692e(5) | | Threaten to take any action that cannot be legally taken or that is not intended to be taken |
| §§ 1692f | | Any unfair or unconscionable means to collect or attempt to collect the alleged debt |

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against the Defendant, Weltman, Weinberg & Reis Co., L.P.A. for the following:

a. Actual damages;

b. Statutory damages pursuant to 15 U.S.C. § 1692k;

c. Reasonable attorney's fees and litigation expenses, plus costs of suit;

d. Such addition and further relief as may be appropriate or that the interests of justice require.

V.   **JURY DEMAND**

Plaintiffs hereby demand a jury trial as to all issues herein.

**Respectfully submitted,**

**WARREN & VULLINGS, LLP**

Date: December 28, 2010

BY: /s/Bruce K. Warren BKW4066
Bruce K. Warren, Esq.

/s/Brent F. Vullings BFV8435
Brent F. Vullings, Esq.

Warren & Vullings, LLP
93 Old York Road
Suite 333
Jenkintown, PA  19046
215-745-9800   Fax 215-745-7880
Attorneys for Plaintiffs